**KATES NUSSMAN ELLIS**
**FARHI & EARLE, L.L.P.**
190 Moore Street, Suite 306
Hackensack, New Jersey 07601
(201) 488-7211 (phone)
(201) 488-1210 (fax)
Michael Farhi Attorney ID No. 019881978
*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| ERIKA Y. JOHNSON,<br><br>Plaintiff,<br><br>v.<br><br>EAST ORANGE VA MEDICAL CENTER, ANGELA BENJAMIN-MCKIE, CHAE IM, MERCEDES CHAMBLISS and MOHINI PARCHURE,<br><br>Defendants. | **Case No.**<br><br>**COMPLAINT AND JURY DEMAND** |

Plaintiff, ERIKA JOHNSON, by and through her attorneys Kates Nussman Ellis Farhi & Earle, L.L.P., by way of Verified Complaint against the Defendants alleges as follows:

**JURISDICTION AND VENUE**

1.      This Court has original jurisdiction over Plaintiff's federal law claims under 28 U.S.C. § 1331, 1332, and 42 U.S.C. § 20000.

2.      Moreover, the Court has original jurisdiction over Plaintiff's federal law claims pursuant to the November 17, 2021 Order of Dismissal signed by Judge Neile F. Eisner permitting Plaintiff to withdraw her EEOC Complaint and file a complaint in Federal Court in accordance with 29 C.F.R. § 1614.109(b) and § 1614.107(a)(3).

3.      The Court has supplemental jurisdiction over Plaintiff's New Jersey State claims

1

by virtue of 28 U.S.C. § 1637.

4. Venue is proper in this District Court pursuant to 28 U.S.C. § 1391(b), as Defendant East Orange VA Medical Center maintains its office in this District. Moreover, the unlawful employment practices complained of herein occurred in this District, and the events and/or omissions giving rise to Plaintiff's claim occurred in this District.

## PARTIES

1. Plaintiff, Erika Y. Johnson is a former employee of Defendant East Orange VA Medical Center. At all relevant times, Plaintiff was employed full-time as a Medical Support Assistant (MSA) within Defendant East Orange VA Medical Center's audiology clinic.

2. Defendant East Orange VA Medical Center (hereinafter "East Orange VAMC") is a medical center located at 385 Tremont Avenue East Orange, New Jersey, 07018-1023. East Orange VAMC provides primary and specialty health services, including audiology services.

3. Defendant Dr. Angela Benjamin-McKie (hereinafter "Dr. McKie") was the chief of audiology at the East Orange VAMC. At all relevant times, Dr. McKie was Plaintiff's direct supervisor in the audiology clinic.

4. Defendant Dr. Chae Im (hereinafter "Dr. Im") was the Section Chief of Physical Medicine Rehabilitation Services (PMRS). At all relevant times, Dr. Im was a first-line supervisor of Dr. McKie.

5. Defendant Mercedes Chambliss (hereinafter "Ms. Chambliss") was the Administrative Officer of Physical Medicine Rehabilitation Services.

6. Defendant Mohini M. Parchure (hereinafter "Ms. Parchure") was a Human Resources specialist at the East Orange VAMC.

7. The above named persons are all competent and of full age.

**FACTS COMMON TO ALL COUNTS**

8. Plaintiff began working as an MSA in the East Orange VAMC audiology clinic on October 17, 2016.

9. At all relevant times, Plaintiff suffers and has suffered from asthma and severe allergies, which were disabilities that required reasonable accommodations.

10. When Plaintiff began working in the audiology clinic, she began experiencing respiratory issues as a result of the poor ventilation and dusty carpets in the audiology office, which exacerbated/aggravated allergies and asthma.

11. Additionally, when Plaintiff began working in the audiology clinic, she was immediately assigned to work with Tijuana Bruce ("Ms. Bruce"), who worked part-time as a clerk within the audiology department.

12. Ms. Bruce was a smoker, and the smell of smoke that emanated from Ms. Bruce's person aggravated/exacerbated Plaintiff's asthma and allergies.

13. Plaintiff therefore informed Dr. McKie that Plaintiff suffered from asthma and that the odor of smoke coming from Ms. Bruce aggravated/exacerbated Plaintiff's asthma.

14. Furthermore, Plaintiff advised Dr. McKie that if Ms. Bruce remained in the office, Plaintiff would need to take leave pursuant to the Family and Medical Leave Act (FMLA).

15. Dr. McKie did not take any action regarding Plaintiff's complaints. Instead, Plaintiff was forced to continue to work with Ms. Bruce in the audiology department until February of 2017 when Ms. Bruce was reassigned.

16. Moreover, Plaintiff's disabilities continued to be aggravated and exacerbated because of the poor ventilation and dusty carpeting in the audiology clinic.

17. Dr. McKie, Dr. Im and Ms. Chambliss were all advised of Plaintiff's disabilities.

18. Defendants collectively, and individually failed to take sufficient measures to accommodate Plaintiff's disabilities.

19. Furthermore, Defendants did not replace the dusty carpeting in the audiology clinic until July of 2017, several months after Plaintiff informed Defendants that the conditions of the audiology clinic were aggravating and exacerbating her asthma.

20. As a result of Defendants' failure and unreasonable delay in providing reasonable accommodations, Plaintiff's disabilities continued to be aggravated/exacerbated.

21. On November 23, 2016, Plaintiff went to visit the pulmonologist to obtain FMLA paperwork regarding her respiratory distress.

22. Plaintiff handed her FMLA paperwork to Dr. McKie on November 28, 2016 in an envelope marked "FMLA".

23. For several weeks, Dr. McKie did not respond to Plaintiff's FMLA request.

24. As a result, on December 16, 2016, Plaintiff contacted her union representative, Darlene Judson, (hereinafter "Ms. Judson") regarding Plaintiff's FMLA paperwork.

25. Ms. Judson scanned Plaintiff's FMLA paperwork and emailed a copy of the paperwork to Dr. McKie. Dr. McKie still neither approved nor responded to Plaintiff's FMLA request.

26. One month later, Plaintiff still did not receive an update regarding her FMLA request. Plaintiff therefore asked Dr. McKie to provide an update regarding the FMLA paperwork. Dr. McKie falsely advised Plaintiff that the FMLA request had been approved.

27. When Plaintiff went to confirm with Ms. Chambliss, however, Plaintiff discovered that her FMLA paperwork was never approved.

28. It was not until March of 2017 that Plaintiff received a response regarding her

FMLA paperwork, at which time Mohini Parchure required Plaintiff to amend her FMLA paperwork.

29. Plaintiff then had to take off work to visit her pulmonologist and retain amended FMLA paperwork.

30. Plaintiff also incurred medical expenses in connection with her repeated visits to the pulmonologist as a result of Defendants' delay in processing Plaintiff's FMLA paperwork.

31. Furthermore, Dr. McKie began to retaliate against Plaintiff because of Plaintiff's decision to contact human resources and the union regarding the unreasonable delay in processing her FMLA request.

32. In June and July of 2017, Dr. McKie repeatedly wrote Plaintiff up for frivolous reasons in retaliation for her decision to report Dr. McKie to Human Resources and the union.

33. Dr. McKie also harassed Plaintiff and made Plaintiff feel uncomfortable by invading Plaintiff's personal space.

34. In July of 2017, the carpets in Plaintiff's office were being replaced because the dusty carpeting was exacerbating and aggravating Plaintiff's disabilities. Plaintiff was therefore asked to temporarily work in a different office while the carpets were being replaced. The door to the new office, however, was always locked. Plaintiff would therefore have to wait inordinate amounts of time for someone to unlock the door for her.

35. When Plaintiff brought attention to the fact that the people who were supposed to unlock the door were consistently late, Dr. McKie wrote Plaintiff up for being upset that she did not have access to the office.

36. Moreover, whenever Dr. McKie reported Plaintiff for alleged misconduct, Dr. McKie performed the misconduct investigations herself. East Orange VAMC failed to establish a

valid independent review process with a neutral supervisor to conduct investigations.

37. Dr. McKie also made it increasingly difficult for Plaintiff to take leaves of absence when Plaintiff's disabilities being aggravated/exacerbated. When Plaintiff would submit her leave requests in advance, Dr. McKie would get upset with Plaintiff and wait until the last minute to cancel patient appointments and approve the leave requests.

38. On June 27, 2017, Plaintiff had a meeting with Dr. Im and Dr. McKie. In the meeting, Dr. McKie yelled at Plaintiff and called her a complainer.

39. By September of 2017, Plaintiff was suffering from anxiety as a result of the toxic workplace she was made to endure.

40. On October 10, 2017, Plaintiff informed Dr. McKie that she would be absent from work the next day because of a medical procedure. Plaintiff's procedure was conducted on October 11, 2017, and Plaintiff's doctor advised her to stay home from work on October 12, 2017.

41. When Plaintiff returned to work on October 13, 2017, Plaintiff provided Dr. McKie with a copy of her doctor's note regarding her absence from work.

42. Nevertheless, on October 16, 2017, Dr. McKie informed Plaintiff that she marked Plaintiff AWOL for October 12, 2017.

43. Plaintiff therefore decided to contact her Equal Employment Opportunity (EEO) Officer regarding Dr. McKie's conduct.

44. On November 2, 2017, Dr. McKie submitted an appraisal for Plaintiff and attempted to change Plaintiff's job description in an attempt to force Plaintiff to take on more work. Specifically, Dr. McKie tried to force Plaintiff to certify hearing aids, which was not in Plaintiff's job description as an MSA.

45. Moreover, Dr. McKie did not attempt to change the job descriptions of any of the

other MSAs and/or office staff in the audiology department.

46. Dr. McKie also attempted to prevent Plaintiff from discussing the appraisal with Ms. Chambliss.

47. Furthermore, Dr. McKie admonished Plaintiff for contacting Ms. Chambliss and told Plaintiff that she should have kept their business "in house."

48. Plaintiff nonetheless decided to report the issue to Ms. Chambliss. Ms. Chambliss in turn advised Plaintiff to discuss the matter with Brian Phillips, who worked at the East Orange VAMC.

49. Mr. Phillips then advised Plaintiff to discuss the issue with Mohini Parchure, who was a Human Resource specialist at the East Orange VAMC.

50. Ms. Parchure refused to intervene on Plaintiff's behalf, even though Ms. Parchure worked within the Human Resources department.

51. Plaintiff therefore decided to file another grievance with the union regarding Dr. McKie's conduct.

52. Plaintiff's union representative, Joe Peay, advised Plaintiff that she was not required to, and should not, certify the hearing aids, because that was not part of Plaintiff's job description.

53. When Joe Peay discussed the matter with Dr. McKie, Dr. McKie misinformed Joe Peay and denied that Plaintiff had been certifying the hearing aids.

54. Joe Peay failed to officially file Plaintiff's grievance with the union.

55. Plaintiff also filed a Workers Compensation claim for the medical injuries she suffered as a result of Defendants' failure to reasonably accommodate her disability.

56. Subsequently, on November 9, 2017, Dr. McKie assaulted Plaintiff by throwing

hearing aids at Plaintiff while she was sitting at her desk in retaliation for Plaintiff's refusal to certify hearing aids.

57. Moreover, Plaintiff complained to Dr. Im and Ms. Chambliss regarding Dr. McKie's aforesaid improper behavior toward Plaintiff and Dr. McKie's attempt to change her job description.

58. Instead of trying to resolve the issues caused by Dr. McKie, Dr. Im and Ms. Chambliss tried to encourage Plaintiff to certify the hearing aids, even though it was not part of Plaintiff's job description.

59. Furthermore, Dr. Im and Ms. Chambliss advised Plaintiff to "hang in there" until the MSAs would be transferred to a new supervisor.

60. Dr. Im and Ms. Chambliss both failed to remedy Dr. McKie's harassing, intimidating, bullying, and retaliatory conduct.

61. In December of 2017, Dr. McKie continued to subject Plaintiff to intimidating, harassing, bullying, and retaliatory conduct.

62. Dr. McKie also began to monitor how long Plaintiff would step away from her desk.

63. Moreover, Dr. McKie continued to delay approving Plaintiff's leave requests.

64. On January 2, 2018, Plaintiff's disabilities exacerbated. Plaintiff experienced difficulty breathing, and her face broke out in a rash.

65. After conducting a pulmonary test, Plaintiff's doctor instructed Plaintiff to stay home from work for one month.

66. Plaintiff subsequently had a follow-up appointment in which her doctor instructed her to stay home for two months.

67. In retaliation for Plaintiff taking leave, Dr. McKie continued to charge Plaintiff leave with pay, even after Plaintiff ran out of sick and annual leave.

68. As a result, when Plaintiff returned to East Orange VAMC, she had a negative leave balance of 17 days.

69. Plaintiff returned to the East Orange VAMC in March of 2018. When Plaintiff returned, she was working in a new office under a new chief and supervisor.

70. In April of 2018, Plaintiff discovered that she had a negative leave balance as a result of Dr. McKie's decision to continue to charge Plaintiff for her leave, even though Plaintiff was entitled to leave without pay under the FMLA.

71. Plaintiff informed Ms. Chambliss of the issue, who in turn advised Plaintiff that Dr. McKie made an error in processing Plaintiff's leave.

72. Plaintiff informed Ms. Chambliss that she wanted to buy back her leave time because she was transferring to Northport VA Medical Center (hereinafter "Northport VAMC"), and did not want to enter the new workspace with a negative leave balance.

73. Ms. Chambliss in turn attempted to dissuade Plaintiff from buying back her leave time.

74. Plaintiff ultimately decided to buy back her leave time and was therefore forced to pay out-of-pocket to offset Dr. McKie's decision to continue to charge Plaintiff for leave with pay.

75. Plaintiff began working in the Northport VAMC on May 14, 2018.

76. Plaintiff was assigned to work in the basement, which was moldy and in turn exacerbated her respiratory issues.

77. Plaintiff therefore requested FMLA, but was informed that she could not receive FMLA until East Orange VAMC sent Plaintiff's FMLA paperwork to the Northport office.

78. Dr. McKie and Ms. Parchure never sent Plaintiff's FMLA paperwork to the Northport office.

79. After corresponding with Susan Epting, Plaintiff's EEO counselor, Plaintiff was issued a notice of right to file a formal discrimination complaint, which Plaintiff received on January 12, 2018.

80. The EEOC investigation regarding Plaintiff's complaint was significantly delayed. In turn, Plaintiff requested a dismissal of her EEOC complaint to allow her to file a federal suit.

81. Plaintiff's EEOC complaint was dismissed by Judge Neile Eisner on November 17, 2021. Plaintiff now exercises her right to bring federal suit against the aforementioned defendants and has commenced the present complaint.

**FIRST CLAIM FOR RELIEF**
**Violation of Title I the Americans with Disabilities Act of 1990, 42 U.S.C. § 12112**
Disability Discrimination and Hostile Work Environment

82. Plaintiff re-alleges and incorporates by reference each and every allegation as if fully set forth herein.

83. The Americans with Disability Act ("ADA") prohibits discrimination on the basis of a disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

84. Moreover, discrimination under the ADA includes an employer's failure and/or refusal to make reasonable accommodations to the known physical or mental limitations of an otherwise qualified disabled employee.

85. Plaintiff has a medical disability, namely asthma, allergies, and other respiratory ailments. Plaintiff is therefore within the class of persons protected by the ADA.

86. Defendants all had knowledge of Plaintiff's aforementioned disabilities.

87. Defendants collectively and individually discriminated against Plaintiff by refusing and/or failing to provide reasonable accommodations in a timely manner when Plaintiff informed Defendants that working with a smoker, as well as the improper ventilation and dusty carpets within the audiology clinic were aggravating and exacerbating her asthma and allergy symptoms.

88. Additionally, Defendant Dr. McKie intentionally and/or knowingly discriminated against Plaintiff on the basis of her disability by failing to provide reasonable accommodations for Plaintiff in a timely manner and unreasonably delaying Plaintiff's leave requests.

89. Defendant Dr. McKie's discriminatory conduct toward Plaintiff subjected Plaintiff to a hostile work environment, which Defendants collectively and individually failed to remedy and/or correct.

90. Plaintiff's disability was a motivating factor in Defendants' pattern of discrimination.

91. The aforementioned conduct and inaction of Defendants created a hostile work environment at East Orange VAMC, which imposed intolerable conditions under which Plaintiff could not reasonably be expected to work.

92. The acts in question were not isolated incidents, and detrimentally affected Plaintiff.

93. Furthermore, the actions of East Orange VAMC through its agents, servants, and employees, in subjecting Plaintiff to a hostile work environment through severe and pervasive discrimination constituted a violation of the ADA.

94. As a direct and proximate result of Defendants' unlawful conduct and the hostile work environment, Plaintiff has suffered harm, including but not limited to lost earnings, lost

benefits, medical expenses, emotional and physical distress, mental anguish, and other economic and non-economic damages. Plaintiff is therefore entitled to compensatory damages.

95. Moreover, by engaging in the aforementioned discriminatory conduct, Defendants have acted with malice and/or deliberate indifference to the rights of Plaintiff, thereby entitling her to an award of punitive damages

**SECOND CLAIM FOR RELIEF**
**Violation of Title V of the Americans with Disabilities Act, 42 U.S.C. § 12112**
Retaliation

96. Plaintiff re-alleges and incorporates each and every allegation in this Complaint as if fully set forth herein.

97. Title V of the Americans with Disabilities Act prohibits employers from discriminating or "retaliating" against employees who "oppose" unlawful discrimination.

98. Title V of the Americans with Disabilities Act also makes it unlawful for an employer to coerce, intimidate, threaten, or interfere with any employee in the exercise or enjoyment of any right granted under the Act.

99. Plaintiff engaged in protected activity by submitting repeated complaints regarding Dr. McKie's discriminatory conduct to her union representative, the EEOC, and East Orange VAMC's human resources department.

100. Plaintiff also engaged in protected activity by submitting leave requests when her disabilities were aggravated/exacerbated, and by submitting a Workers' Compensation claim for her injuries.

101. Defendant Dr. McKie retaliated against Plaintiff for the aforementioned protected activity by: unreasonably delaying Plaintiff's leave requests, marking Plaintiff AWOL when Plaintiff took leave, harassing and berating Plaintiff, attempting to change Plaintiff's job

description, throwing hearing aids at Plaintiff, yelling at Plaintiff and calling her a "complainer", raising frivolous complaints against Plaintiff, and charging Plaintiff for her leave time when Plaintiff was entitled to unpaid leave under the FMLA.

102. Moreover, Defendants individually and collectively had notice of Dr. McKie's retaliatory behavior and failed to remedy and/or correct Dr. McKie's illegal behavior.

103. There was a causal connection between Plaintiff's protected activities and Defendants' conduct. Defendants subjected Plaintiff to such actions because of and in retaliation for Plaintiff's protected activities.

104. As a result of retaliation by Defendants, Plaintiff has suffered anguish, humiliation, distress, inconvenience, monetary damages, medical expenses, and loss of enjoyment of life due to their actions, entitling her to compensatory damages.

105. Moreover, by engaging in the aforementioned retaliatory conduct, Defendants have acted with malice and/or deliberate indifference to the rights of Plaintiff, thereby entitling her to an award of punitive damages.

### THIRD CLAIM FOR RELIEF
**Violation of the Family and Medical Leave Act of 1993, 42 U.S.C. § 2615**
Disability Discrimination and Retaliation

106. Plaintiff re-alleges and incorporates each and every allegation in this Complaint as if fully set forth herein.

107. The Family Leave Act of 1993 permits eligible employees to take job-protected unpaid leave, or to substitute appropriate paid leave if the employee has earned or accrued it, for up to a total of 12 work weeks in a 12 month period if an employee's own serious health condition makes the employee unable to perform the functions of his or her job.

108. Employers are also prohibited from discriminating against an individual who has exercised his or her rights under the Act.

109. Plaintiff exercised her rights under the Act by requesting FMLA leave when her asthma and allergy conditions were exacerbated by the presence of a heavy-duty smoker in the clinic and by the poor ventilation and dusty carpets in the office.

110. Plaintiff also exercised her rights under the FMLA by taking emergency medical leave from January 2018 to February 2018 as a result of her disability.

111. Defendants violated Plaintiff's rights under the Act by significantly and unreasonably delaying Plaintiff's FMLA request, which Plaintiff submitted to Dr. McKie on November 28, 2016.

112. Moreover, Plaintiff suffered adverse employment action including retaliation and intentional employment discrimination as a result of her use of FMLA because Dr. McKie repeatedly charged Plaintiff for taking leave, instead of granting Plaintiff the unpaid leave to which she was entitled under the FMLA.

113. Dr. McKie's conduct caused Plaintiff economic damage as Plaintiff was forced to pay out-of-pocket expenses to "buy back" her leave.

114. Furthermore, Defendants collectively and individually failed to correct Dr. McKie's unlawful conduct.

115. There was a causal connection between Plaintiff's protected activities and Defendants' actions. Defendants subjected Plaintiff to such actions because of and in retaliation for Plaintiff's protected activities.

116. As a result of Defendants' violation of Plaintiff's FMLA rights, and Defendants' retaliation against Plaintiff, Plaintiff is entitled to back pay, out-of-pocket expenses, and liquidated damages.

**FOURTH CLAIM FOR RELIEF**
**Violation of the New Jersey Law Against Discrimination, N.J.S.A. 10:5-12**
Disability Discrimination- Failure to Accommodate and Engage in Interactive Process

117. Plaintiff re-alleges and incorporates each allegation in this Complaint as if fully set forth herein.

118. The New Jersey Law Against Discrimination makes it unlawful for an employer to discriminate against an employee on the basis of his or her disability by failing to provide reasonable accommodations to a disabled employee.

119. Plaintiff made Defendants aware of her disabilities and requested reasonable accommodations to alleviate her disabilities, namely her asthma and allergy symptoms. Plaintiff specifically advised Defendants that the presence of a heavy-duty smoker, as well as the poor ventilation and dustiness of the audiology clinic was exacerbating her asthma and allergies and making her feel ill.

120. Defendants nonetheless failed to provide reasonable accommodations in a timely manner. Instead, Plaintiff was forced to continue to work in the aforementioned conditions for significant periods of time.

121. Moreover, Defendants failed to reasonably accommodate Plaintiff's FMLA leave request and other medical leave requests throughout her employment. Defendants instead repeatedly caused significant delays to Plaintiff's leave requests, forcing Plaintiff to suffer conditions at work that increasingly aggravated and exacerbated her disabilities.

122. The aforesaid acts of Defendants were outrageous, malicious, willful, and done with reckless disregard for the rights of Plaintiff under N.J.S.A. 34:15-39.1, warranting the imposition of punitive damages.

123. As a direct and proximate result of Defendants' aforesaid acts of disability discrimination, Plaintiff suffered and sustained damages, including medical expenses, loss of income and benefits and severe emotional distress.

**FIFTH CLAIM FOR RELIEF**
**Violation of the New Jersey Law Against Discrimination, N.J.S.A. 10:5-12**
Disability Discrimination- Hostile Work Environment

124. Plaintiff re-alleges and incorporates each and allegation in this Complaint as if fully set forth herein.

125. The New Jersey Law Against Discrimination makes it unlawful for an employer to discriminate against an employee on the basis of his or her disability.

126. Defendants collectively and individually discriminated against Plaintiff in violation of the New Jersey Law Against Discrimination by subjecting Plaintiff to a hostile work environment based on disability-discrimination.

127. Plaintiff submitted leave requests as a result of her worsening symptoms in connection with her disabilities.

128. When Defendants unreasonably delayed Plaintiff's leave requests, Plaintiff reported the illegal activity to her union representative and to Ms. Chambliss. Plaintiff also filed a claim for Workers Compensation in connection with her disability.

129. As a direct and proximate result of Plaintiff's decision to request leave, and Plaintiff's decision to report the disability discrimination to human resources and her union representative, Dr. McKie subjected Plaintiff to a hostile work environment, namely by

unreasonably delaying Plaintiff's leave requests, marking Plaintiff AWOL when Plaintiff took leave, harassing and berating Plaintiff, attempting to change Plaintiff's job description, throwing hearing aids at Plaintiff, yelling at Plaintiff and calling her a "complainer", raising frivolous complaints against Plaintiff, and charging Plaintiff for her leave time when Plaintiff was entitled to unpaid leave under the FMLA.

130. Moreover, Defendants individually and collectively had notice of Dr. McKie's discrimination and retaliatory behavior and failed to prevent, remedy and/or correct the same.

131. Defendants actions and omissions subjected Plaintiff to a hostile work environment contrary to the New Jersey Law Against Discrimination.

132. Moreover, the aforesaid acts of Defendants were outrageous, malicious, willful, and done with reckless disregard for the rights of Plaintiff under N.J.S.A. 34:15-39.1 warranting the imposition of punitive damages.

133. As a direct and proximate result of the aforesaid acts of disability discrimination and retaliation, Plaintiff suffered and sustained damages, including medical expenses, loss of income and benefits and severe emotional distress.

134. Plaintiff is entitled to all remedies available for violation of the New Jersey Law Against Discrimination, including damages, liquidated damages, and attorneys' fees and costs.

### SIXTH CLAIM FOR RELIEF
**Violation of Title V of the Americans with Disabilities Act, 42 U.S.C. § 12112**
Retaliation

135. Plaintiff re-alleges and incorporates each and every allegation in this Complaint as if fully set forth herein.

136. Title V of the Americans with Disabilities Act prohibits employers from discriminating or retaliating against employees who oppose unlawful discrimination.

137. Title V of the Americans with Disabilities Act also makes it unlawful for an employer to interfere with any employee in the exercise or enjoyment of any right granted under the Act.

138. Plaintiff engaged in protected activity by filing an EEOC complaint against East Orange VAMC for its discrimination against Plaintiff.

139. On December 1, 2020, after determining that Plaintiff's original EEOC claims needed to be reinvestigated, Judge Eisner issued an order requiring Defendant East Orange VAMC to complete a supplemental investigation of Plaintiff's claims.

140. The order also required the East Orange VAMC to submit a supplemental investigative report advising of their findings within 90 days from the date of the order.

141. East Orange VAMC failed to comply with Judge Eisner's 90 day deadline.

142. Furthermore, instead of reinvestigating Plaintiff's claims and generating a supplemental investigative report as ordered by Judge Eisner, the agency re-submitted pages from its original investigative report and labeled them as a "supplemental" in a deceptive attempt to undermine Plaintiff's claims.

143. East Orange VAMC never conducted a supplemental investigation and their non-compliance with Judge Eisner's order caused significant delays to Plaintiff's EEOC complaint.

144. East Orange VAMC's refusal to complete a supplemental investigation, and their attempts to cover up their non-compliance constituted retaliation against Plaintiff for her decision to file an EEOC complaint.

145. As a result of the East Orange VAMC's retaliation, Plaintiff has suffered anguish, humiliation, distress, inconvenience, monetary damages, and loss of enjoyment of life, entitling her to compensatory damages.

146. Moreover, by engaging in the aforementioned retaliatory conduct, Defendant East Orange VAMC has acted with malice and/or deliberate indifference to the rights of Plaintiff, thereby entitling her to an award of punitive damages.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that the Court enter judgment in her favor and against the Defendants for the following relief:

A. An award of damages against Defendants, in an amount to be determined at trial, plus interest, to compensate for medical expenses, as well as all monetary and/or economic damages;

B. An award of damages against Defendants, in an amount to be determined at trial, plus interest, to compensate for all non-monetary and/or compensatory damages, including, but not limited to, compensation for Plaintiff's emotional distress;

C. An award of punitive damages in an amount to be determined at trial;

D. An award of liquidated damages in an amount to be determined at trial;

E. Prejudgment interest on all amounts due;

F. An award of Plaintiff's reasonable attorney's fees and costs; and

G. Such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by a jury on all issues of fact and damages as stated in this action.

Dated: February 10, 2022

                                                  **KATES NUSSAN ELLIS FARHI & EARLE, LLP**
                                                  **Attorneys for the Plaintiff**

                                                  _/s/ Michael Farhi_
                                                  Michael Farhi, Esq.