NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ERIKA Y. JOHNSON, | Civil Action No. 22-00721 (SDW) (CLW) |
| Plaintiff, | |
| v. | **OPINION** |
| EAST ORANGE VA MEDICAL CENTER, *et al.*, | April 4, 2023 |
| Defendants. | |

**WIGENTON**, District Judge.

Before this Court is Defendants the Hon. Denis R. McDonough, U.S. Secretary of Veterans Affairs (the "VA"), East Orange VA Medical Center (the "East Orange VAMC"), Dr. Angela Benjamin-McKie, Chae Im, Mercedes Chambliss, and Mohini Parchure's (collectively, "Defendants") Motion to Dismiss (D.E. 30) Plaintiff Erika Y. Johnson's ("Plaintiff") Amended Complaint (D.E. 23) for failure to state a claim upon which relief can be granted pursuant to Federal Rules of Civil Procedure ("Rule") 12(b)(1) and 12(b)(6). Subject matter jurisdiction is proper pursuant to 28 U.S.C. § 1331, and venue is proper pursuant to 28 U.S.C. § 1391. This opinion is issued without oral argument pursuant to Rule 78. For the reasons discussed below, Defendants' Motion to Dismiss is **GRANTED**.

I.  **FACTUAL AND PROCEDURAL BACKGROUND**[1]

Plaintiff is a former employee of Defendant, the East Orange VAMC audiology clinic. (D.E. 1 ¶¶ 1, 9.)[2] After Plaintiff began working at the audiology clinic on October 17, 2016, she was assigned to work in an office with part-time clerk Tijuana Bruce ("Ms. Bruce"), who was a smoker. (*Id.* ¶¶ 9–13.) The office in which Plaintiff worked also had "poor ventilation and dusty carpets." (*Id.* ¶ 11.) Plaintiff notified her direct supervisor, Dr. Angela Benjamin-McKie ("Dr. McKie"), Chief of Audiology, that Plaintiff suffered from asthma and that the odor of smoke coming from Ms. Bruce "aggravated [and] exacerbated [her] asthma and allergies." (*Id.* ¶¶ 4, 13–14.) Plaintiff "advised Dr. McKie that if Ms. Bruce remained in the office, Plaintiff would need to take leave pursuant to the Family and Medical Leave Act (["]FMLA["])."[3] (*Id.* ¶ 15.)

On November 23, 2016, Plaintiff visited a pulmonologist and sought FLMA paperwork, which she submitted to Dr. McKie on November 28, 2016. (*Id.* ¶¶ 22–23.) On December 16, 2016, Plaintiff contacted her union representative to discuss her FMLA paperwork. (*Id.* ¶ 25.) The union representative sent the paperwork to Dr. McKie. (*Id.* ¶ 26.) A month later, Dr. McKie "advised Plaintiff that her FMLA request had been approved."[4] At some point afterward, Plaintiff met with Mercedes Chambliss ("Ms. Chambliss"), Administrative Officer of Physical Medicine

---

[1] As a preliminary matter, Plaintiff's opposition brief contains many factual allegations concerning the EEO Complaint and the VA investigation that were not included in the Amended Complaint, which the Court will disregard in deciding this motion. "Plaintiffs cannot add factual allegations in Opposition; the mechanism for curing pleading deficiencies is to file an amended complaint," which this Court will give Plaintiff one final opportunity to do. *Crozier v. Johnson & Johnson Consumer Cos.*, Inc., 901 F. Supp. 2d 494, 501 (D.N.J. 2012). If Plaintiff files a second amended complaint, her counsel should attach any necessary exhibits and identify them in a separate declaration or certification. Any factual allegations necessary to state a claim should be included in the amended pleading.

[2] This opinion's paragraph citations to the Amended Complaint, which repeats paragraph numbers, refer to the Parties and Facts Common to All Counts sections on D.E. pages 2–10.

[3] The Complaint does not note the date Plaintiff notified Dr. McKie of the issue and advised that she may have to take leave.

[4] The Complaint does not note the date or method by which Plaintiff received this information from Dr. McKie.

2

Rehabilitation Services, who confirmed that Plaintiff's FMLA paperwork was not approved.[5]  (*Id.* ¶¶ 6, 28.)

In February 2017, Plaintiff was reassigned and was no longer required to work with Ms. Bruce.  (*Id.* ¶ 16.)  Dr. McKie's supervisor, Dr. Chae Im ("Dr. Im"), Section Chief of Physical Medicine Rehabilitation Services ("PMRS"), and Ms. Chambliss were advised of Plaintiff's asthma and allergies.[6]  (*Id.* ¶ 18.)

In March 2017, Mohini Parchure ("Ms. Parchure"), Human Resources Specialist, informed Plaintiff that she needed to provide amended FMLA paperwork, which Plaintiff provided at some point.[7]  (*Id.* ¶¶ 7, 29.)

In June and July 2017, Dr. McKie "repeatedly wrote Plaintiff up" and "invad[ed] Plaintiff's personal space."[8]  (*Id.* ¶¶ 34–35.)

On June 27, 2017, Plaintiff met with Dr. McKie and Dr. Im.  (*Id.* ¶ 40.)  During the meeting, Dr. McKie called Plaintiff "a complainer."  (*Id.*)

In July 2017, the East Orange VAMC replaced the carpeting in the audiology clinic "because the dusty carpeting was exacerbating and aggravating Plaintiff's" asthma and allergies.  (*Id.* ¶¶ 20, 36.)  Plaintiff worked in a different office that was "always locked," resulting in Plaintiff waiting for "someone to unlock the door for her."  (*Id.* ¶ 36.)  At some point, Plaintiff complained

---

[5] The Complaint does not note the date or method by which Plaintiff contacted Ms. Chambliss or the date or method by which Ms. Chambliss relayed the information.

[6] The Complaint does not note the date of notification, method(s) of notification, or person who advised these supervisors of Plaintiff's asthma and allergies.

[7] The Complaint notes that Plaintiff had to take off work and incur expense visiting a pulmonologist to amend the paperwork, but does not specify a date of the visit, what the amendment entailed, or the expense involved with the pursuit.  (*Id.* ¶¶ 30–31.)

[8] The Complaint does not specify the dates, times, and circumstances of the submissions by Dr. McKie, and does not specify specific details concerning Dr. McKie invading Plaintiff's space.

to Dr. McKie about waiting for the door to be unlocked.[9]  (*Id.* ¶ 37.)  Afterward, "Dr. McKie wrote Plaintiff up for being upset that she did not have access to the office."  (*Id.*)

Dr. McKie additionally reported Plaintiff for misconduct and investigated the misconduct reports herself.[10]  (*Id.* ¶ 38.)  Dr. McKie also "wait[ed] until the last minute" to approve leave requests that Plaintiff submitted.[11]  (*Id.* ¶ 39.)

In September 2017, Plaintiff suffered from anxiety.[12]  (*Id.*)  On October 10, 2017, Plaintiff advised Dr. McKie that Plaintiff "would be absent from work" on October 11, 2017 due to a medical procedure.[13]  (*Id.* ¶ 42.)  Plaintiff had the procedure on October 11, 2017 and stayed home from work on October 12, 2017 pursuant to her doctor's advice.[14]  (*Id.*)  Plaintiff returned to work and provided a doctor's note to Dr. McKie on October 13, 2017.  (*Id.* ¶ 43.)  On October 16, 2017, Dr. McKie "informed Plaintiff that she marked Plaintiff AWOL for October 12, 2017."  (*Id.* ¶ 44.)  Sometime thereafter, Plaintiff contacted the Equal Employment Opportunity Officer concerning her issues with Dr. McKie.[15]  (*Id.* ¶ 45.)

On November 2, 2017, Dr. McKie "submitted an appraisal" and sought to have Plaintiff certify hearing aids as an additional job responsibility.[16]  (*Id.* ¶ 46.)  Sometime thereafter, Plaintiff contacted Ms. Chambliss to discuss the appraisal, and Ms. Chambliss "advised Plaintiff to discuss

---

[9] The Complaint does not specify when or how often this issue occurred.

[10] The Complaint does not specify when these instances occurred, to whom Dr. McKie reported Plaintiff's misconduct, or what the investigations entailed.

[11] The Complaint does not provide specific dates, times, or other pertinent information concerning the timing of the requests and delayed approvals.

[12] The Complaint does not provide any details concerning the anxiety diagnosis.

[13] The Complaint does not specify the nature of the procedure and whether it was emergent, and does not specify the timing of and method of notice provided to Dr. McKie.

[14] Plaintiff does not contend that she advised her employer that she would be absent on October 12, 2017.

[15] The Complaint does not note the date of contact and details of the report, or the method by which Plaintiff contacted the officer.

[16] The Complaint does not note what an appraisal is, to whom it is submitted, and the purpose of an appraisal.

4

the matter with Brian Phillips" ("Mr. Phillips"), another employee of the East Orange VAMC. (*Id.* ¶¶ 48–50.) Mr. Phillips advised Plaintiff to discuss the matter with Ms. Parchure, who did not "intervene of Plaintiff's behalf."[17] (*Id.* ¶¶ 51–52.)

Sometime thereafter, Plaintiff filed a grievance with the union,[18] after which the union representative confirmed that Plaintiff's job description did not include certifying hearing aids. (*Id.* ¶¶ 53–54.) The union representative, Joe Peay ("Mr. Peay"), discussed the matter with Dr. McKie, who "denied that Plaintiff had been certifying the hearing aids." (*Id.* ¶ 55.) Mr. Peay did not file Plaintiff's grievance with the union. (*Id.* ¶ 56.)

At some point, Plaintiff filed a Worker's Compensation claim concerning "medical injuries" suffered while working at the East Orange VAMC.[19] (*Id.* ¶ 57.)

On November 9, 2017, Dr. McKie "[threw] hearing aids at Plaintiff while she was sitting at her desk." (*Id.* ¶ 58.) Sometime thereafter, Plaintiff complained to Dr. Im and Ms. Chambliss about Dr. McKie's behavior.[20] (*Id.* ¶ 59.) Dr. Im and Ms. Chambliss "encourage[d] Plaintiff to certify the hearing aids," and "advised [P]laintiff to 'hang in there' . . . ." (*Id.* ¶¶ 60–61.)

In December 2017, Plaintiff continued to have issues with Dr. McKie, who "began to monitor how long Plaintiff would step away from her desk."[21] (*Id.* ¶¶ 63–65.) Dr. McKie delayed approving Plaintiff's leave requests.[22] (*Id.* ¶ 65.)

---

[17] The Complaint does not note when these discussions took place, or by which method Plaintiff contacted these individuals.

[18] The Complaint does not specify any date, time, method of submission, or other pertinent details of the grievance filed.

[19] The Complaint does not specify the date, time, or other details of medical injuries, and does not specify any pertinent details of the Worker's Compensation claim, such as filing date, resulting adjudication, and claimed injuries.

[20] The Complaint does not provide pertinent details of the complaint, such as the time, date, or method of complaint.

[21] The Complaint does not specify dates and times related to these allegations.

[22] The Complaint does not specify dates and times related to the delayed approvals.

On January 2, 2018, Plaintiff visited a doctor after she "experienced difficulty breathing, and her face broke out in a rash."[23] (*Id.* ¶ 66.) The doctor advised Plaintiff to stay home from work for a month, and then later advised Plaintiff to stay home for two months.[24] (*Id.* ¶¶ 67–68.)

Plaintiff returned to work in March 2018 and began working under a new chief and supervisor. (*Id.* ¶ 71.) In April 2018, Plaintiff discovered that she had a negative leave balance of 17 days. (*Id.* ¶¶ 69–72.) Plaintiff notified Ms. Chambliss, who advised "that Dr. McKie had made an error in processing Plaintiff's leave." (*Id.* ¶ 73.) Plaintiff "decided to buy back her leave time" and transfer to the Northport VA Medical Center (the "Northport VAMC").[25] (*Id.* ¶¶ 74–76.)

After Plaintiff began working in the Northport VAMC on May 14, 2018, she "was assigned to work in the basement, which was moldy and in turn exacerbated her respiratory issues." (*Id.* ¶¶ 77–78.) Plaintiff requested FMLA, but Dr. McKie and Ms. Parchure did not send Plaintiff's FMLA paperwork to the Northport VAMC office. (*Id.* ¶¶ 79–80.)

On January 12, 2018, Plaintiff received notice of a right to file an Equal Employment Opportunity complaint (the "EEO Complaint"). (*Id.* ¶ 81.) Plaintiff later "requested a dismissal of her [Equal Employment Opportunity Commission ("EEOC")] complaint to allow her to file a federal suit."[26] (*Id.* ¶ 82.) The EEO Complaint was dismissed on November 17, 2021, to allow Plaintiff to file the instant federal claim. (*Id.* ¶ 83.)

Plaintiff filed a complaint in this Court on February 10, 2022, alleging six counts. (D.E. 1.) On August 4, 2022, Plaintiff filed an amended complaint (the "Amended Complaint"), alleging

---

[23] The Complaint does not specify pertinent details of this event, including whether it occurred at work or home, timing, of the issue, and the diagnosis provided by her doctor.

[24] The Complaint does not provide pertinent details concerning the diagnosis and advice to stay home for months.

[25] The Complaint does not specify whether the leave time Plaintiff bought back was leave time she had used, or whether she was entitled to additional leave time and erroneously bought back time of which she was entitled. The Complaint lacks pertinent details concerning the leave time purchase.

[26] The Complaint does not specify when Plaintiff filed the EEO Complaint and when she requested dismissal of such.

four counts, including violation of the Rehabilitation Act of 1973 ("Rehab Act"), 29 U.S.C. § 701 *et seq.*, Americans with Disabilities Act ("ADA") disability discrimination and hostile work environment (Count I against Defendant The Honorable Richard McDonough, U.S. Secretary of Veterans Affairs); violation of the Rehab Act, 29 U.S.C. § 701 *et seq.*, ADA retaliation (Count II against Defendant The Honorable Richard McDonough, U.S. Secretary of Veterans Affairs); violation of the Family and Medical Leave Act of 1993 ("FMLA"), 42 U.S.C. § 2615, interference and retaliation (Count III against all Defendants); and violation of the Rehab Act, 29 U.S.C. § 701 *et seq.*, ADA retaliation (Count VI against Defendant The Honorable Richard McDonough, U.S. Secretary of Veterans Affairs). (D.E. 23 ¶¶ 84–136.) On September 8, 2022, Defendants moved to dismiss the Amended Complaint, (D.E. 30), and the parties completed timely briefing thereafter, (D.E. 45; D.E. 35).

## II.  LEGAL STANDARDS

### A. Rule 12(b)(1)

Subject matter jurisdiction establishes a court's "very power to hear the case." *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). A district court has subject matter jurisdiction to hear claims "arising under the Constitution, laws, or treaties of the United States" pursuant to 28 U.S.C. § 1331. A defendant may move to dismiss a complaint for lack of subject matter jurisdiction under Rule 12(b)(1) by challenging jurisdiction facially or factually. *Const. Party of Pa. v. Aichele*, 757 F.3d 347, 357 (3d Cir. 2014) (citing *In re Schering Plough Corp. Intron/Temodar Consumer Class Action (Schering Plough)*, 678 F.3d 235, 243 (3d Cir. 2012)). "A facial attack 'contests the sufficiency of the complaint because of a defect on its face,' whereas a factual attack 'asserts that the factual underpinnings of the basis for jurisdiction fails to comport with the jurisdictional prerequisites.'" *Halabi v. Fed. Nat'l Mortg. Ass'n*, Civ.

No. 17-1712, 2018 WL 706483, at *2 (D.N.J. Feb. 5, 2018) (quoting *Elbeco Inc. v. Nat'l Ret. Fund*, 128 F. Supp. 3d 849, 854 (E.D. Pa. 2015)). "[A] facial attack calls for a district court to apply the same standard of review it would use in considering a motion to dismiss under Rule 12(b)(6), i.e., construing the alleged facts in favor of the nonmoving party." *Const. Party of Pa.*, 757 F.3d at 358 (citing *Schering Plough.*, 678 F.3d at 243)).

### B. Rule 12(b)(6)

An adequate complaint must be "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This Rule "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level . . . ." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, 235–36 (3d ed. 2004)); *see also Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (stating that Rule 8 "requires a 'showing,' rather than a blanket assertion, of an entitlement to relief" (quoting *Twombly*, 550 U.S. at 555)).

When considering a Motion to Dismiss under Rule 12(b)(6), a court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips*, 515 F.3d at 231 (quoting *Pinker v. Roche Holdings, Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555); *see also Fowler v. UPMC Shadyside*, 578 F.3d 203, 209–11 (3d Cir. 2009) (discussing the *Iqbal* standard). Determining whether the allegations in a

8

complaint are "plausible" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679 (citation omitted).  If "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint should be dismissed for failing to "show[] . . . that the pleader is entitled to relief" as required by Rule 8(a)(2). *Id.*

Moreover, a court may look beyond the pleadings and "consider 'document[s] integral to or explicitly relied upon in the complaint,' or any 'undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document.'" *Pinkney v. Meadville, Pa.*, No. 21-1051, 2022 WL 1616972, at *2 (3d Cir. May 23, 2022) (quoting *In re Asbestos Prods. Liab. Litig. (No. VI)*, 822 F.3d 125, 133 (3d Cir. 2016)).

### III. DISCUSSION

#### A. FMLA Claim (Count III)

Plaintiff asserts in Count III that Defendants violated the FMLA, 42 U.S.C. § 2615.  (D.E. 23 ¶¶ 112–22.)  Defendants raise a facial challenge to Count III and argue that, based on sovereign immunity, this Court lacks subject matter jurisdiction, pursuant to Rule 12(b)(1).  (*See* D.E. 30-2 at 16–19; D.E. 35 at 4.)  "When subject matter jurisdiction is challenged under Rule 12 (b)(1), the plaintiff must bear the burden of persuasion."  *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991).  Here, however, Plaintiff has conceded dismissal of Count III by failing to respond to Defendant's argument to dismiss this Count.  *See Griglak v. CTX Mortg. Co., LLC*, No. 09-5247, 2010 WL 142023, at *3 (D.N.J. Apr. 8, 2010) ("The failure to respond to a substantive argument to dismiss a count, when a party otherwise files opposition, results in a waiver of that count.").  Because Plaintiff does not have a private right of action and the Government has not waived sovereign immunity, pursuant to Title II of the FMLA, (D.E. 30-2 at

9

16–19; D.E. 35 at 4), this Court does not have subject matter jurisdiction over Count III. This Count, therefore, is dismissed with prejudice.

  **B.**  **Rehabilitation Act Claims (Counts I, II, and IV)**

The Rehab Act is a "broad federal statute aimed at eradicating discrimination against individuals with disabilities." *Berardelli v. Allied Servs. Inst. of Rehab. Med.*, 900 F.3d 104, 114 (3d Cir. 2018) (quoting *Helen L. v. DiDario*, 46 F.3d 325, 330 (3d Cir. 1995), *as amended* (Feb. 2, 1995)); *see also Shiring v. Runyon*, 90 F.3d 827, 830–31 (3d Cir. 1996) ("The Rehabilitation Act forbids employers from discriminating against persons with disabilities in matters of hiring, placement, or advancement."). "[A]n individual with a disability [i]s one who: '(i) has a physical or mental impairment which substantially limits one or more of such person's major life activities; (ii) has a record of such an impairment; or (iii) is regarded as having such an impairment.'" *Miller v. Cohen*, 52 F. Supp. 2d 389, 394–95 (M.D. Pa. 1998) (quoting 29 U.S.C. § 706(8)(B) (Supp. 1997)). After the enactment of the Rehab Act, "Congress enacted the ADA in 1990 'as a clear and comprehensive national mandate designed to eliminate discrimination against individuals with physical and mental disabilities across the United States." *Id.* at 115 (quoting *McGann v. Cinemark USA, Inc.*, 873 F.3d 218, 221 (3d Cir. 2017)). The ADA was designed "to fit hand in glove with the RA, leaving intact the 'scope of protection . . . under the [RA].'" *Id.* (alterations in original) (quoting *Menkowitz v. Pottstown Mem'l Med. Ctr.*, 154 F.3d 113, 120 (3d Cir. 1998)). Here, Plaintiff asserts multiple violations of the Rehabilitation Act, including disability discrimination

and hostile work environment (Count I), and ADA retaliation (Counts II and IV).  This Court addresses each allegation in turn.

### 1. Disability Discrimination and Hostile Work Environment (Count I)

#### a) Disability Discrimination

Plaintiff alleges that Defendants violated the ADA, which prohibits employers from "discriminat[ing] against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).  To make a prima facie case under the Rehab Act, a plaintiff must show "(1) that he or she has a disability; (2) that he or she is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) that he or she was nonetheless terminated or otherwise prevented from performing the job." *Wishkin v. Potter*, 476 F.3d 180, 184–85 (3d Cir. 2007) (quoting *Shiring v. Runyon*, 90 F.3d 827, 830–31 (3d Cir. 1996)).

When an employee believes that discrimination has occurred, the employee "must initiate contact with a[n EEO] Counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action." 29 C.F.R. 1614.105(a)(1).  To file a claim under the Rehab Act, a federal employee must first exhaust available administrative remedies within the 45-day timeframe. *See Discenza v. Hill*, 221 Fed. App'x 109, 111 (3d Cir. 2007) (citing *Robinson v. Dalton*, 107 F.3d 1018, 1020 (3d Cir. 1997)).  "This 45-day time limit operates akin to a statute of limitations:  a claim brought more

11

than 45 days after the date it accrued will be barred." *Winder v. Postmaster Gen. of the U.S.*, 528 Fed. App'x 253, 255 (3d Cir. 2013).

Here, Plaintiff concedes that she did not meet the 45-day deadline to file a complaint with the EEOC alleging disability discrimination—but claims in her opposition brief that she was unaware of the 45-day deadline. (D.E. 34 at 25–26.)  This Court cannot excuse Plaintiff's failure to file a complaint within the required timeframe because Plaintiff did not plead any allegations to support equitable tolling.  *See K.S. o/b/o K.S.M. v. Hackensack Bd. of Educ.*, No. 16-2155, 2018 WL 2980391, at *4 (D.N.J. June 14, 2018) ("A party must plausibly plead allegations to support equitable tolling and 'a district court may dismiss an untimely cause of action if it is plain on the face of the complaint that the limitations period cannot be tolled.'" (quoting *Menichino v. Citibank, N.A.*, No. 12–0058, 2013 WL 3802451, at *6 (W.D. Pa. July 19, 2013))).  Plaintiff's claim for disability discrimination is therefore dismissed as untimely.

                b)  Hostile Work Environment

Plaintiff alleges that Defendant The Honorable Denis Richard McDonough, U.S. Secretary of Veterans Affairs violated the ADA because "Dr. McKie's discriminatory conduct toward Plaintiff subjected Plaintiff to a hostile work environment, which Defendant failed to remedy and/or correct," and "Plaintiff's disability was a motivating factor in Defendant's pattern of discrimination." (D.E. 1 ¶¶ 93–97.)  Harassment includes discrimination that is "sufficiently severe or pervasive to alter the conditions of [the plaintiff's] employment and create an abusive working environment." *Mercer v. Se. Pa. Transit Auth.*, 26 F. Supp. 3d 432, 443 (E.D. Pa. 2014) (quoting *Walton v. Mental Health Ass'n of Se. Pa.*, 168 F.3d 661, 667 (3d Cir. 1999)).  To establish a hostile work environment claim, a plaintiff must

> show[] that: 1) [the plaintiff] is a qualified individual with a disability under the ADA; 2) [the plaintiff] was subject to

> unwelcome harassment; 3) the harassment was based on [the plaintiff's] disability or a request for an accommodation; 4) the harassment was sufficiently severe or pervasive to alter the conditions of [the plaintiff's] employment and to create an abusive working environment; and 5) that [the defendant employer] knew or should have known of the harassment and failed to take prompt effective remedial action.

*Walton*, 168 F.3d at 667. In support of a hostile work environment claim, a plaintiff "must establish, by the totality of the circumstances, the existence of a hostile work or abusive environment which is severe enough to affect the psychological stability of a[n] . . . employee." *Id.* at 401 (quoting *Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1081 (3d Cir. 1996)). "The totality of the circumstances may include: (1) the frequency of the discriminatory conduct; (2) its severity; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether it interferes with an employee's work performance." *Id.*

Here, Plaintiff alleges that Dr. McKie "repeatedly wrote Plaintiff up" and "invad[ed] Plaintiff's personal space," (D.E. 1 ¶¶ 34–35); "called Plaintiff "a complainer," (*id.*); wrote Plaintiff up for complaining about being locked out of a door, (*id.* ¶ 37); "wait[ed] until the last minute" to approve leave requests that Plaintiff submitted, (*id.* ¶ 39); "marked Plaintiff AWOL for October 12, 2017," (*id.* ¶ 44); sought to have Plaintiff certify hearing aids as an additional job responsibility, (*id.* ¶ 46); "[threw] hearing aids at Plaintiff while she was sitting at her desk," (*id.* ¶ 58); "began to monitor how long Plaintiff would step away from her desk," (*id.* ¶¶ 63–65); "denied that Plaintiff had been certifying the hearing aids," (*id.* ¶ 55); and "made an error in processing Plaintiff's leave," (*id.* ¶ 73). When analyzing these allegations, this Court does not discern that Plaintiff has met the standard for establishing a hostile work environment.

To begin with, "construing the complaint in the light most favorable to the [P]laintiff," and "under any reasonable reading of the complaint," *Phillips*, 515 F.3d at 231, Plaintiff does not

present facts sufficient to support a finding that she has a qualified disability under the ADA. "[A]n individual with a disability [i]s one who: '(i) has a physical or mental impairment which substantially limits one or more of such person's major life activities; (ii) has a record of such an impairment; or (iii) is regarded as having such an impairment.'" *Miller*, 52 F. Supp. 2d at 394–95 (quoting 29 U.S.C. § 706(8)(B) (Supp. 1997)).  Here, Plaintiff broadly alleges that she has allergies and asthma, but does not give sufficient details as to how those conditions limit her ability to perform major life activities and, importantly, does not explain why the allergies and asthma constitute disabilities.

To determine whether a plaintiff "is affected by a disability that substantially limits a major life activity, a court should consider: '(i) the nature and severity of the impairment; (ii) the duration or expected duration of the impairment; and (iii) the permanent or long[-]term impact resulting from the impairment.'" *Gallagher v. Sunrise Assisted Living*, 268 F. Supp. 2d 436, 441 (E.D. Pa. 2003) (quoting 29 C.F.R. § 1630.2(j)(2)).  Critically, "[a]ny determination as to whether an individual is disabled should be made in reference to any measures that mitigate the individual's impairment." *Id.* (citing *Sutton v. United Airlines, Inc.*, 527 U.S. 471, 482-83 (2002)).  Plaintiff, in this instance, has alleged that she suffers from allergies and asthma, which this Court accepts as true.  Plaintiff has detailed the steps her employer took to mitigate the issue—specifically, reassigning a co-worker and replacing carpeting in the facility.  (D.E. 1 ¶¶ 16, 20. 36.)  Plaintiff, however, has not presented any measures she took to mitigate the effects of the allergies and asthma.  The facts as alleged in the Amended Complaint are vague and devoid of pertinent details concerning the "nature and severity of the impairment," "the duration or expected duration of the impairment," and "the impact resulting from the impairment." *Gallagher*, 268 F. Supp. 2d at 441 (finding that allergies and "unspecified breathing issues" are not viable ADA disabilities).  This

14

Court, therefore, is unable to confirm that Plaintiff's infirmities actually constitute disabilities. *See Walton*, 168 F.3d at 667.

Even if Plaintiff had established a disability, she has not presented facts sufficient to demonstrate harassment based on that disability or request for accommodation—harassment pervasive enough to alter the conditions of her employment and create an abusive environment. *Id.* While it is evident that Plaintiff and Dr. McKie did not get along, the cited examples of workplace interactions do not clearly denote harassment based on a disability. Dr. McKie's actions—writing Plaintiff up, calling her a complainer, asking her to take on additional job duties, monitoring her time away from her desk, reporting her for failing to call in when taking an additional day for medical leave (which Plaintiff admits failing to do, but seeks to justify by explaining that she brought in a doctor's note), and making an error in processing Plaintiff's leave—do not indicate harassment, but rather indicate workplace interactions between a supervisor and employee that may be "best classified among the 'minor annoyances' of office life that do not rise to the level of adverse employment actions." *Kasper v. Cnty. of Bucks*, 514 App'x 210, 217 (3d Cir. 2013) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)).

Furthermore, Plaintiff's allegation concerning Dr. McKie throwing hearing aids at Plaintiff lacks pertinent details such as whether Plaintiff was struck by the hearing aids and if so where she was struck, and whether Plaintiff was injured by the hearing aids and, if so, how. (*See* D.E. 1 ¶ 58.) Regardless, even if such details are presented, on its own that allegation would not sufficiently constitute harassment based on a disability—harassment that her employer should have taken remedial action to remedy. *See Walton*, 168 F.3d at 667. The hearing aid conflict appears to have stemmed from Plaintiff's refusal to take on additional work duties, which is unrelated to her alleged disabilities and, rather, related to her belief that she must adhere to the job description her union

15

has negotiated with her employer. Consequently, because this Count is insufficiently pleaded, it must be dismissed.

### 2. Retaliation (Count II and IV)

Plaintiff alleges in Count II that Dr. McKie retaliated against Plaintiff for engaging in protected activity—(1) submitting complaints to her union representative, the EEOC, and East Orange VAMC's human resources department, and (2) submitting a Worker's Compensation claim—by

> delaying Plaintiff's leave requests, marking Plaintiff AWOL when Plaintiff took leave, harassing and berating Plaintiff, attempting to change Plaintiff's job description, throwing hearing aids at Plaintiff, yelling at Plaintiff and calling her a "complainer," raising frivolous complaints against Plaintiff, and charging Plaintiff for leave time when Plaintiff was entitled to unpaid leave under the FMLA.

(D.E. 1 ¶¶ 105–07.) Plaintiff further alleges in Count IV that the VA retaliated against Plaintiff for engaging in protected activity—filing the EEO Complaint—by failing to submit a supplemental investigative report to the Administrative Court, and instead "re[]submit[ing] pages from its original investigative report and label[ing] them as a 'supplemental' . . . ." (*Id.* ¶¶ 128–32.)

The Rehab Act provides that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this Act or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this Act." 42 U.S.C. § 12203(a). To plead a *prima facie* claim of retaliation in violation of the Rehab Act, a plaintiff is "required to show that (1) [the plaintiff] engaged in protected activity; (2) [the plaintiff] suffered a materially adverse action; and (3) there is a causal connection between the adverse action and the protected activity." *Kendall v. Postmaster Gen. of the U.S.*, 543 Fed. App'x 141, 144 (3d Cir. 2013).

Plaintiff's claim of retaliation for making complaints within the East Orange VAMC and to her union must first be analyzed to discern whether she "demonstrate[d] 'that [s]he engaged in protected conduct.'" *Barber v. CSX Distrib. Servs.*, 68 F.3d 694, 702 (3d Cir. 1995).  Plaintiff's complaints included processing delays concerning her requests for FMLA leave, disagreements with Dr. McKie concerning her attendance and activities at work, and disagreement with the expansion of her job duties.  None of these complaints constitutes protected activity under the Rehab Act because they do not pertain to the allergies and asthma she alleges form the basis of her disabilities.  The complaints that pertain to Plaintiff's alleged infirmities—working with a smoky co-worker and working in an area with dusty carpets—were addressed and remedied by her employer in a relatively short time frame, and thus do not factor into Plaintiff's retaliation claim.  Plaintiff's other complaints constitute general grievances and dissatisfaction with her employer's acts unrelated to the Rehab Act, which "does not constitute the requisite protected conduct for a prima facie case of retaliation." *Barber*, 68 F.3d at 701–02 (internal quotations omitted) ("A general complaint of unfair treatment does not translate into a charge of illegal . . . discrimination.").

Further, even if these complaints constituted protected activity, Plaintiff has not pleaded facts sufficient to demonstrate adverse action taken by Defendants.  Plaintiff's leave requests were not evidently denied (even if not approved within her preferred timeframe), and, moreover, Plaintiff was not demoted, penalized, or terminated; she left the position of her own volition to work at another facility.  (*See* D.E. 74, 77.)  At best, Plaintiff has alleged that Defendants have not performed administrative duties in an efficient or effective manner; but the allegations do not show a causal connection between protected activity and adverse action, and, moreover, Plaintiff has not pleaded viable adverse action.

Additionally, Plaintiff's claim related to Worker's Compensation does not implicate protected activity related to the Rehab Act, and there is no viable claim for adverse action connected to the claim. *Kendall*, 913 F. Supp. 2d at 192 (noting that filing a Worker's Compensation claim is not a protected activity under the ADA).

Plaintiff's EEO Complaint, however, could potentially implicate protected activity. *Id.* (finding that an EEO complaint can constitute protected activity under the Rehabilitation Act if a plaintiff makes "a facially valid complaint of discrimination on the basis of a disability or a physical or mental impairment" (citing *Slagle v. Cnty. of Clarion*, 435 F.3d 262 (3d Cir. 2006))). The Amended Complaint, however, does not allege any viable adverse action that occurred after the filing of the EEO Complaint on January 12, 2018. Plaintiff asserts that in March 2018, "Dr. McKie made an error in processing Plaintiff's leave," but does not allege that the error stemmed from retaliation due to Plaintiff's EEO Complaint and, further, does not assert that Dr. McKie even knew about Plaintiff's EEO Complaint. (D.E. 1 ¶ 73.) That allegation, as pleaded, does not constitute viable adverse action that could form the basis of retaliation for protected activity.

Finally, Plaintiff's Count IV allegation concerning the VA's failure to perform a supplemental investigation does not sufficiently or plausibly plead adverse action or causation. Plaintiff has elucidated scant facts concerning the supplemental investigation, and simply notes that "[t]he EEOC investigation regarding Plaintiff's complaint was significantly delayed," but that she was permitted to file a federal suit. (*Id.* ¶ 82.) While Plaintiff's Count IV pleading asserts retaliation based on the VA's failure to properly conduct and submit a supplemental investigation, the Amended Complaint notes that the VA did take *some* form of action—it "re[]submitted pages from its original investigative report and labeled them as 'supplemental' . . . ." (*See id.* ¶ 132.) Plaintiff's Amended Complaint, however, does not make clear how the inadequacy of the VA's

submission constitutes adverse action.  Further, Plaintiff does not plead a causal connection between the protected activity—Plaintiff filing an EEO Complaint—and any alleged adverse action.  Plaintiff could have addressed the VA's failure to adequately adhere to the court's order with the administrative court but opted instead to file the instant suit.  (*Id.* ¶¶ 82–83.)  Plaintiff has not sufficiently detailed how the VA's action, or inaction, adversely impacted her when a remedy—addressing the issue with the administrative court—was available and went unused.  Consequently, Plaintiff has not sufficiently pleaded a retaliation claim.  *Kendall*, 543 Fed. App'x at 144.  Counts II and IV are therefore dismissed.

### IV.    CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss is **GRANTED**.  Count III, against all Defendants, is dismissed with prejudice.  Counts I, II, and IV, against The Honorable Denis Richard McDonough, U.S. Secretary of Veterans Affairs, are dismissed without prejudice.  Plaintiff shall have one final opportunity to amend the Complaint.  If Plaintiff chooses to pursue this matter, she shall file a second amended complaint within thirty (30) days.  An appropriate order follows.

/s/ Susan D. Wigenton  
**SUSAN D. WIGENTON, U.S.D.J.**

Orig:   Clerk  
cc:     Parties  
        Cathy L. Waldor, U.S.M.J.